*Jackson, on the demise of Williams and others,* v.
*Chamberlin and others.*

RUSSEL moved for judgment, as in case of non-suit, for not proceeding to trial. The affidavit stated, that issue was joined previous to *June*, 1802.

*Van Vechten* read an affidavit, setting forth that thirty-five cases were on the calendar, of which only thirteen were tried, but, from the length of those, and the criminal business before the court, the present action could not be heard.

*Per Curiam.* As many causes *were* tried, it is incumbent on the plaintiff to show that *those* issues were older than *his.* Let the defendant take the effects of his motion, unless the plaintiff stipulate and pay costs.

*David Deas* v. *Paschal N. Smith, President of the
Columbian Insurance Company.*

ISSUE had been joined in this cause, in 1800, and two commissions had been sued out ; one had been returned, but a long time having elapsed, the defendant gave notice, for the last term, that he would then move for judgment, as in case of nonsuit. On its being brought on, the plaintiff stipulated to try, at the next sittings, or circuit court, reserving to himself the right of applying to the court, for a renewal of the stipulation, in case the other commission, then pending, should not be returned.

Aug. Term,
1803.

*Benson* now renewed the application for judgment, on an affidavit, stating, that a few days after the above stipulation was entered into, the commission to which it alludes, arrived, and that the cause had been duly noticed for the last sittings, but had not been brought on.

*Woods*, contra, read an affidavit by the parties, on account of whom the plaintiff had effected the policy of insurance, on which the present action was brought. The affidavit stated the loss, exhibition of proofs, application for payment, refusal to pay, commencement of suits, suing out of commissions, and their return. That the interest was not fully proved by the witnesses examined under the last commission, as they were privy only to the lading of what was purchased by one of the witnesses, and covered by a former policy, but knew nothing of the residue; that the cause was, nevertheless, noticed for trial, under an idea of proving interest in sundry other articles of the cargo by one *York Wilson*, who, though a seafaring man, the deponent believed to be permanently resident in *New-York*, as he had lived there for twelve months uninterruptedly, but had lately gone to the *East-Indies;* the deponent first learnt this circumstance during the time of the last sittings, and his witness was not expected to return before the ensuing winter; that being advised the testimony of *Wilson* was material, the defendant did not proceed to trial. But that he was advised, and believed, one *William Robinson*, shortly expected here, was a material witness for him, and that he believed he should be able to obtain *Robinson's* attendance at the next sittings in *New-York*, or the circuit thereafter; that, as the deponent

Aug. Term,
1803.

was informed, and believed, the ground of defence, insisted on by the defendant, was the want of interest, and that the deponent understood, and believed, the defendant, or some person in his behalf, offered to return the premium, and pay costs, which offer the deponent refused to accept. That the deponent was informed and believed, the cause was one of the oldest on the calendar, but was, when called in its order, passed, for the accommodation of the defendant; that the deponent would have proceeded to trial, but for a notice to produce certain papers, which he was not prepared to do. These reasons, *Woods* argued, were sufficient to prevent the object of the motion; at least, if a nonsuit was ordered, it would be on condition of the defendant's abiding by his own proposal, and paying what was acknowledged to be due, the premium and costs of suit.

*Benson* offered a counter affidavit to show that *York Wilson* was a slave, and therefore the want of his testimony could never have prevented the cause from being heard, because, had he been present, his evidence could not have been received.

*Woods* contended, that counter affidavits were inadmissible, because, in the first place, a copy had never been furnished, and, in the next place, the practice was to exclude them, it being incumbent on the party moving, to support his application on his original depositions.

*Benson* acknowledged the general proposition, but distinguished the present case by this circumstance; that the counter affidavit was not to support the mo-

tion, but to contradict a collateral and independent fact asserted by the plaintiff; and as to not being furnished with a copy, the plaintiff had not given a copy of his.

*Woods.* Copies of affidavits in exculpation, are never afforded, those to charge or demand, are.

*Per Curiam.* The application is for judgment, as in case of nonsuit : this is opposed by a deposition read by the plaintiff, disclosing facts, to rebut which, the defendant offers a counter affidavit : a question is made whether it can be received. On examining into the point, the court finds the practice to be settled against its reception. It is expressly decided, in *Grove* ads. *Campbell, ante,* 115. " that a party can " never support his motion by any affidavits but those " on which he originally grounds it."

The motion must, therefore, depend on the first affidavits. From *that* by the plaintiff, among other things which it contains, it appears, that the commission mentioned in his stipulation, as the one then pending, was returned before the last circuit, and that he might have then gone to trial. His affidavit further states, that the return was examined, and the proof wanted, not contained in the answers to the interrogatories ; that the interest required, did not appear ; that there was a witness who resided in *New-York,* by whom it was expected to establish the same facts. This witness was not applied to, nor was any measure taken to procure his testimony till after the commencement of the court, and then he is found to be gone to the *East-Indies.* There is, however, ano-

ther witness, who knows something material, but it is not stated what, nor that any measure is taken to procure his attendance. It is further stated, that this is one of the oldest issues; that it was called on and passed, for the accommodation of the defendant, though it is before sworn he did not proceed to trial, because the testimony of *York Wilson* was, as the plaintiff was advised by his counsel, material, and could not be had. The court are of opinion, the reasons are not sufficient. This is a second application for judgment: there has already been a stipulation, and *that* a special one. The want of a witness is alleged, and no diligence shown to procure him. There ought to have been immediate measures taken to subpœna him. It does not sufficiently appear that the cause was passed for the accommodation sworn to ; it was necessary to have substantiated this ; it rests on the single oath of the party ; the counsel himself ought to have stated this. But though we should grant the nonsuit, we are requested to do this on condition. The affidavit, as to making the offer, is equivocal ; and if, in any case, we would impose such terms, this is not one, for the plaintiff has not disclosed enough to show the proposition was ever made.

*Benson* pressed the court to reconsider the case determined in *October* term, 1800,* and weigh his distinction.

* *Grove* ads. *Campbell.*

*Per Curiam.* We shall look into it, and if we see occasion to alter our opinion, the bar will be informed.

G g

Aug. Term,
1803. of it.  In the mean time, judgment of nonsuit must be entered.

N. B.  The court never spoke to it again.


### The President and Directors of the Manhattan Company v. Ledyard & Ledyard.

THIS case case was submitted without argument. RADCLIFF, Justice, now delivered the opinion of the court.

This is an action by the plaintiffs, as indorsees of a promissory note made by *Brown, Talbot & Co.* to the defendants, for 488 dollars and 17 cents, and indorsed by them to the plaintiffs.

The declaration avers, that *James Brown, William Talbot,* and *John Goodere,* acting under the firm of *Brown, Talbot & Co.* made the note in question, the proper name and firm of *Brown Talbot & Co.* being thereunto subscribed; and that the defendants being partners, under the firm of *Austin Ledyard & Co.* indorsed the said note in writing, *the proper name and style of the said firm of Austin Ledyard & Co.* being thereunto subscribed.  The other parts of the declaration are in the usual form.

The partnerships of the makers and indorsees of the note, and the making and indorsing of the same, as above set forth, are admitted.

The evidence on the trial was, that *Brown,* one of the makers, subscribed the note by the partnership